Abington vs. Travis.

---

AMANDA ABINGTON, PLANTIFF IN ERROR, vs. THOS. L. TRAVIS DEFENDANT IN ERROR.

1. Where a chattel is bequeathed to the wife for life, and the husband, before he receives it from the executor, sells it, and the purchaser takes and retains the possession; it is such a reduction of property in possession, by the husband, as bars the wife's right of survivorship.

## ERROR to St. Charles Circuit Court.

### STATEMENT OF THE CASE.

This was an action of detinue, to recover the possession of several slaves, instituted by the plaintiff in error against the defendant in the court below. The circuit court, sitting as a jury, found a verdict for the defendant, and a motion for a new trial having been made by the plaintiff, and overruled by the court, the case is brought here by appeal.

It appears, by the bill of exceptions, that Paulina, one of the slaves sued for, and the mother of the others, was bequeathed to the plaintiff during her natural life, by the last will

Abington vs. Travis.

of Taylor Abington, deceased, of whom she was the widow. The testator died in the year 1842, and Samuel Abington, his executor. took upon himself the execution of the will, and took possession of the said slaves; that the executor hired out the slaves till the 14th of February, 1846, when he made his final settlement of his administration in the St. Charles county court. That on said final settlement, the executor was ordered to distribute said slaves to the plaintiff, so soon as John B. Abington, her husband, should execute a bond in the sum of $1400, conditioned, that he would not remove the slaves out of this State. The defendant was, at the date of said order, in possession of the slaves, as hirer of the slaves from the executor. That by virtue of an execution against John B. Abington, in favor of said executor, the slaves were levied upon by the constable of the township, and while they were in his possession, as constable, the defendant in the execution (the said John B. Abington,) paid off the execution to the officer, and took the slaves home with him in the night. The next morning the executor and the son of the defendant in error, forcibly took the slaves from the possession of Abington, and gave them into the possession of the defendant, Travis, where they have been ever since. A few days after, they were again levied upon by virtue of two executions in favor of Joseph Ellis, and Fanny Abington against Jno. B. Abington, and sold by the officer, and bought by the defendant, Travis, for the sum of two hundred and fifty dollars. That previous to the sale by constable, the defendant, Travis, and John B. Abington had entered into an agreement, by which Travis agreed to purchase the said slaves at the sum of $300 00, of which sum, $250 00 were paid at the constable's sale, as aforesaid, and the balance of $50 00, to the said John B. Abington, afterwards. That the order of the county court, requiring John B. Abington to give security, has never been complied with. That at the time of the constable's sale, Travis had full notice of the existence of said order. That defendant was the owner of the reversionary interest in said slaves, after the expiration of the life estate of said Amanda Abington. That defendant was in possession of the slaves at the time of the commencement of this suit. That Jno. B Abington was dead before the commencement of this suit.

At the close of the testimony, the plaintiff prayed the court to instruct the jury :

1st. That the possession of the slaves, which John B. Abington obtained from the constable Dyer, being in violation of the order of distribution of said slaves, made by the county court of St. Charles county, and without the consent of the executor of Taylor Abington, deceased, who was entitled to the possession of said slaves, was not such a possession of said slaves as to divest the said plaintiff of her life estate in said slaves.

2nd. The possession of said slaves, by John B. Abington, under the circumstances that it was obtained, gave to him, the said John B. Abington no legal interest in said slaves.

3rd. That by the last will of T. Abington deceased, said plaintiff was entitled to the possession and use of the said slave, Paulina, and her children, during the natural life of her, the plaintiff, subject, however, to the payment of the debts of the said Taylor, deceased.

4th. That while said slaves were in the possession of the executor of Taylor Abington, deceased, for the purpose of administration, they were not subject to sale, to pay the debts of the husband of plaintiff.

5th. The seizure and sale of said slaves, by the constable, to satisfy two executions against John B. Abington (the husband of plaintiff,) before said slaves had legally passed out of the possession of the executor of Taylor Abington, deceased, did not divest the plaintiff of any right which she had in them, by virtue of the will of Taylor Abington, deceased.

6th. That the agreement made by John B. Abington, through Stephen Ellis, his agent, to let Travis buy the negroes at the price of $300; was void as against plaintiff, and did not deprive her of any of her legal rights in said slaves.

The first, second and sixth of these instructions were refused; and the third fourth and fifth were given.

And the court, at the instance of the defendant, gave the following instructions:

1st. That by the will of Taylor Abington. decease, a life estate, in the slaves in question, vested in Amanda Abington.

2nd. That the marriage of the plaintiff, said Amanda, with John B. Abington, together

16

with acts of ownership over said slaves, exercised by John B. Abington, during the marriage, vested the said John B. Abington with all the rights of his wife, Amanda in said property.

3rd. That the sale by John B. Abington, of the slaves in question, to Travis, for the sum of $300, vested in said Travis all the right of John B. Abington and of his wife, Amanda, in said property.

## A. H. BUCKNER, for plaintiff in error.

It will be insisted that the court misinstructed the jury as to the law of this case, and that a new trial ought to have been granted.

Marriage is not an absolute gift of the wife's chattels to the husband, unless they are in possession. He must reduce them into possession during the coverture, or he obtains no title to them; Claney's Rights of Married Women, p. 8 and 9. A legacy or right, as distributee, is a chose in action, Wade vs. Grimes, How. R.; Seakey vs. Maupin, 8 Mo. R. 372.

It must also be a possession, as husband, and not as trustee, executor or administrator, Wallace vs. Lalcaferro, 2 Call's R. 472; 3 Stew's Ala. Reports 375; 3 ib. 180; Johnson vs. Wren, 12 Ves. 497; Bakes vs. Hall. 3 Dessan's R. 155, 160; 16 Ves. 413; 2 Dana's R. 438; Bennett vs. Dellingham, 6 Munf. 64.

A legatee under a will has no legal right to the legacy, unless the assent of the executor can be shown. A mere wrongful possession can give him no right; Wardlan vs. Gray, 2 Hill's C. R. 651; Harper vs. Archer, 8 Smede and M. 229; 2 Williams Ex. 11 sec. 4 and 5; Gregory vs. Marks, 3 Run. 355.

Did Abington or his wife, have any right to the possession of this property until the debts were paid and the order of distribution or payment passed? If not, their right to recover or hold the slaves was not enlarged by the final settlement. They were ordered to give bond, and until that time, they could have no rightful possession of the slaves, or, at least, until the executor assented to their taking possession, and no such assent is shown.

The court below instructed the jury that the sale of Abington to Travis, conveyed all the right of Abington and his wife, to the slaves. This cannot be law, unless by possession he had acquired his wife's right to the slaves. This possession he had not had, because, he could not have it except with the assent of the executors, and that has not been shown. It cannot be presumed, because it presupposes a dereliction of duty on the part of the executors. The executors might have brought trover against the constable, when the sale was made, and if so, it is conclusive against the husband's possession.

## COALTER, for respondent.

The point presented in this case is, the power of the husband to dispose of the personal estate of the wife.

By the will of Taylor Abington, his wife, Amanda, was vested with a life estate in the slaves in question. By her marriage with John B. Abington, this estate, by operation of law, vested in him. By the common law, the husband has an absolute estate in the personal chattels of the wife, with power to dispose of them during the marriage, and if he dies, leaving them undisposed of, they go to his personal representatives, and not to the wife, or her personal representative. For this, see Bacon's abridgement, title, Baron & Femme; Blackstone's commentaries, vol. 2 page 433 and following. By our adoption of the common law, we have adopted this principle. A life estate, then, in the slaves in question, vested in Amanda Abington, and by the marriage with John B. Abington, this estate vested in him. The slaves were reduced into possession by John B. Abington, and sold to the defendant, Travis. The possession of the slaves was delivered to John B. Abington, as the record shows, at the first levy by the constable, and at the second levy and sale by the constable;

Abington vs. Travis.

the negroes were bought by Travis, for the sum of three hundred dollars; two hundred and fifty dollars of which were paid to the constable on the execution, and the remaining fifty dollars paid to the husband, John B. Abington. It will thus appear that Travis united in himself all the titles to the slaves, having first acquired the reversionary interest, and then purchased the life estate from the husband of Amanda Abington. But perhaps it will be contended that the possession of the slaves by John B. Abington, was not legal, because the order of the county court, requiring security that they should not be taken out of the State, had not been complied with. To this it may be replied that this order was made to protect the reversioner, and if they were to go into the hands of Travis, there was no use for this security, as Travis was himself the reversioner. The administrator might therefore well leave them in the hands of Travis, without security, having a complete title to them; he being the reversioner and also the purchaser of the life estate. But if there is any force in the objection, that bond had not been given, as ordered by the county court, and therefore the husband could not legally get the possession, the same objection applies now to the suit brought by the wife, for the record shows that the order of the county court is still not complied with, and therefore the plaintiff had no right to sue. If the husband could legally obtain possession, because he had not complied with the order of the county court, the wife is in the same predicament and cannot now sue, because she has equally failed to comply with said order; in either view of the case, the judgment must be affirmed.

GAMBLE, J., delivered the opinion of the court.

The only question in this case requiring examination, is, whether the purchase of the slaves by the defendant, Travis; and his subsequent possession of them in the life time of John B. Abington, the husband of the plaintiff, terminated her right of survivorship.

Travis, it appears, was the owner of the reversionary interest in the slaves, after the termination of Mrs. Abington's life estate; and the bond required to be given by the order of the county court, was for the protection of his rights.

When John B. Abington, the husband of the plaintiff, agreed with the defendant, Travis, that Travis should purchase the slaves for a specific price, at the sale to be made by the constable, and when that purchase was accordingly made, and part of the agreed price was paid to the constable, and the balance to Abington, the transaction was a direct sale by Abington, himself. As the possession has, ever since the purchase, remained in Travis, we have the case of a bequest of a chattel to a woman, and the sale of the chattel by her husband before he had actually received it from the executor, but always, after the sale, continuing in the possession of the purchaser. There can be no doubt, that this is such a reduction of the property into possession, as bars the wife's right of survivorship. Chancellor Kent, in his elementary treatise, 2 Comm. 137, 2d edition, states the law in relation to a wife's choses in action thus: "The rule is, that if the husband appoints an attorney to receive the money and he receives it, or if he mortgages the

wife's choses in action, or assigns them without reservation for a valuable consideration, or if he recovers the debt by a suit in his own name, or if he releases the debt, in all these cases upon his death, the right of survivorship in the wife, to the property ceases." This language is transcribed from the opinion delivered by the learned author in the case of Schuyler vs. Hoyle, 5 John Ch. R. 196.

The sale by Abington, in its most limited operation, was a transfer of all the right which he as husband had, to reduce the slaves to possession and hold them as his own property. This power has been exercised by the defendant, his vendee, while the coverture continued, and his possession has never been disturbed nor his right to the possession disputed by the executor. The executor might well waive the bond required in the order of the county court, when the entire estate in the slaves was vested in the defendant and there was no person who could be benefitted by the bond.

The judgment of the circuit court was rightly given for the defendant, and is, with the concurrence of Judge Scott, affirmed.